IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Milliken & Company, | Civil Action No. 7:14-cv-00778-BHH |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| Richard W. Evans, | |
| Defendant. | |

This matter is before the Court on Plaintiff's motion for preliminary injunction. [Doc. 20.] Pursuant to 28 U.S.C. § 636; Local Civil Rule 73.02, D.S.C.; and the August 21, 2014 Order of reference by the Honorable Bruce Hendricks [Doc. 39], this magistrate judge is authorized to review this pre-trial motion and submit findings and a recommendation to the District Court.

## BACKGROUND

Plaintiff designs, manufactures, markets, and sells commercial carpet products, including a wide range of high-performance modular and broadloom carpet products and floor coverings to customers in the commercial carpet markets, including the corporate, education, government, healthcare, senior living, retail, hospitality, aviation, and assembly markets, both inside and outside of the United States. [Doc. 20-3 ¶ 3.] Plaintiff refers to this part of its business as its Floor Covering Division, and Commercial Carpet is a discrete business unit in the Floor Covering Division. [*Id.*]

Plaintiff hired Defendant in October 2009 in connection with the purchase of Defendant's former employer—Product Concepts Residential, LLC ("Constantine")—in

which Defendant held an ownership interest. [*Id.* ¶ 5.] Plaintiff and Defendant executed an Executive Employment and Protective Covenants Agreement on October 5, 2009 ("the 2009 Employment Agreement"), under which Defendant assumed the position of President-Constantine with Plaintiff. [*Id*. ¶ 7; Doc. 20-4.] The 2009 Employment Agreement contained the following restrictive covenants: non-competition, non-solicitation of customers, non-solicitation of associates, and non-disclosure and non-use of confidential information and trade secrets. [*Id*. ¶¶ 7–10.]

On June 10, 2010, Plaintiff and Defendant executed an Agreement to Modify and Amend Provisions of a Prior Employment and Protective Covenants Agreement ("the 2010 Amendment"), under which Defendant was promoted to Business Manager of Plaintiff's Commercial Carpets, North America. [Doc. 20-5.] The 2010 Amendment provides that it "is intended to modify previous agreements by and between [Plaintiff and Defendant] on the subjects covered by [the 2010 Amendment]" and that it "supersedes all prior or contemporaneous oral or written agreements, representations, and undertakings on the subjects contained herein." [*Id.* ¶ 8.] As part of the 2010 Amendment, Defendant agreed to execute and be bound by all the terms of Plaintiff's Associate Agreement. [*Id.* ¶ 3.] Plaintiff's Associate Agreement contains restrictive covenants similar to those in the 2009 Employment Agreement. [Doc. ¶ 13; Doc. 20-6.] Defendant never signed the Associate Agreement. [Doc. 21-1 ¶ 8.]

On March 12, 2013, Defendant resigned from Plaintiff, indicating his belief that he had outlived his usefulness and that it was best for Plaintiff to fill his position with a more capable individual. [Doc. 20-7.] The resignation became effective on May 17, 2013. [Doc. 20-3 ¶ 14.] On June 10, 2013, Defendant wrote a letter to Plaintiff's General Counsel,

claiming Defendant had "been turned down or blocked by Plaintiff in [his] efforts to gain meaningful employment" with three companies—Woolen Resources, Inc.; Godfrey Hirst USA, Inc.; and Totally Enterprises.[1] [Doc. 20-8.] In the letter, Defendant sought to enforce a salary continuation provision in the non-competition section of the 2009 Employment Agreement and demanded $17,916.67 as his monthly base salary. [*Id*.] Plaintiff responded to the letter on June 13, 2013, advising Defendant that, in Plaintiff's opinion, Woolen Resources, Inc. and Godfrey Hirst USA, Inc. were not competitive with Plaintiff; thus, Defendant could work at either of those two companies. [Doc. 20-9.] Plaintiff believed and advised, however, that Defendant could not work for Totally Enterprises without violating his non-compete agreement. [*Id*.] Because Plaintiff removed any non-compete concerns with respect to Woolen Resources, Inc. and Godfrey Hirst USA, Inc. and because Defendant had other employment options available outside of the carpet industry, Plaintiff declined to pay Defendant under the salary continuation provision. [*Id*.]

In its June 13, 2013, letter to Defendant, Plaintiff also expressed its concern that Defendant was seen at NeoCon, a key trade show in the floor covering industry, with Bob Weiner ("Weiner"), another former executive for Plaintiff and the owner of Totally Enterprises.[2] [*Id*.; Doc. 20-3 ¶¶ 27, 33.] On November 1, 2013, Plaintiff's counsel requested that Defendant provide assurances to Plaintiff that he would comply with certain

---

[1]Totally Enterprises does business as Totally Carpet. [*See* Doc. 20-3 ¶ 25.] The Court uses the company names interchangeably in this Report and Recommendation.

[2]On December 5, 2012, Weiner entered into a consulting agreement with Plaintiff. [Doc. 20-3 ¶ 29.] On March 25, 2013, Plaintiff and Weiner terminated the consulting agreement and entered into a Collaboration and Protective Covenants Agreement ("the Weiner Agreement"). [*Id.*] The Weiner Agreement provides that Weiner, and thus Totally Enterprises, may compete with Plaintiff in a limited space of the market. [Doc. 33-4.]

3

aspects of his contractual obligations to Plaintiff. [Doc. 20-3 ¶ 34.] On November 7, 2013, Defendant's counsel responded that Defendant was not willing to provide the requested assurances. [*Id.*]

Plaintiff filed this action in the Court of Common Pleas for Spartanburg County, South Carolina on February 7, 2014. [Doc. 1-1.] On March 7, 2014, Defendant removed the case to this Court. [Doc. 1.] In the Complaint, Plaintiff alleges Defendant has engaged in a course of conduct since his resignation indicating that he is, in fact, providing services for or on behalf of Totally Enterprises in direct violation of his contractual obligations. [Doc. 1-1 at 18 ¶ 59.] Specifically, Plaintiff alleges Defendant has attended NeoCon on behalf of Totally Enterprises; has directly contacted at least two of Plaintiff's sales employees and, on information and belief, solicited their interest in working for Totally Enterprises; has been working for and/or performing services for or on behalf of Totally Enterprises; and has met with one or more suppliers on behalf of Totally Enterprises. [*Id*. at 18 ¶¶ 60–63.] Additionally, Plaintiff alleges Defendant is in possession of, has used, and is using confidential and sensitive information and trade secrets to the benefit of Totally Enterprises in violation of his contractual obligations. [*Id*. at 19 ¶ 64.] Plaintiff contends that if Totally Enterprises or any of Plaintiff's competitors in the floor covering business gain access to Plaintiff's confidential and trade secret information, it will provide its competitors with a significant and unfair advantage. [*Id*. at 19 ¶ 71.]

On June 6, 2014, Plaintiff filed a motion for preliminary injunction. [Doc. 20.] Defendant filed a response in opposition on June 23, 2014 [Doc. 21], and Plaintiff filed a reply on July 2, 2014 [Doc. 23]. The motion was referred to the undersigned on August 21,

2014. [Doc. 39.] A hearing was held on September 3, 2014. [Doc. 46.] Accordingly, the motion is ripe for review.

## APPLICABLE LAW

A preliminary injunction "protect[s] the status quo . . . to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litigation*, 333 F.3d 517, 525 (4th Cir. 2003). It is "an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Coucil, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 376 (2008) (citing *Munaf v. Green*, 553 U.S. 674, 689–90 (2008)). To obtain a preliminary injunction (or TRO), a plaintiff must show four elements:

> 1) he is likely to succeed on the merits,
>
> 2) he will suffer irreparable harm if the preliminary (or TRO) injunction is not granted,
>
> 3) the balance of equities favors him, and
>
> 4) the injunction or TRO is in the public interest.

*Winter*, 129 S. Ct. at 374; *Moore v. Kempthorne*, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006) ("The standard for granting either a TRO or a preliminary injunction is the same."); *see also Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 345–47 (4th Cir. 2009) (explaining how the *Winter* standard for preliminary injunctions was different from the standard previously applied in the Fourth Circuit), *judgment vacated and remanded*, 130 S. Ct. 2371 (2010), *in light of Citizens United v. Fed. Election Comm'n*, 130 S. Ct. 876

(2010).  The plaintiff must establish all four elements to receive injunctive relief.  *Winter*, 129 S. Ct. at 374.

The Fourth Circuit explained the Supreme Court in *Winter* requires "that the plaintiff make a clear showing that it will likely succeed on the merits at trial."  *Real Truth About Obama, Inc.*, 575 F.3d at 346 (citing *Winter*, 129 S. Ct. at 374, 376).  Moreover, the party seeking the injunction must make a clear showing that it will likely suffer irreparable harm without an injunction.  *Id.* at 347 (citing *Winter*, 129 S. Ct. at 374–76).  Further, the Supreme Court in *Winter* emphasized the public interest requirement, *id.*, requiring courts to "'pay particular regard for the public consequences in employing the extraordinary remedy of injunction,'" *Winter*, 129 S. Ct. at 376–77 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

## **DISCUSSION**

An analysis of the *Winter* factors reveals that Plaintiff has failed to satisfy the elements required for an injunction to issue because Plaintiff has failed to demonstrate that it will suffer immediate irreparable harm if an injunction is not issued.  Plaintiff argues that without a preliminary injunction, it will "suffer irreparable injury in the form of lost business, lost customer goodwill, and the continued use and disclosure of its Confidential Information and Trade Secrets if [Defendant] is not prevented from unfairly competing with [Plaintiff] on behalf of Totally Carpet."  [Doc. 20-2 at 19.]  Plaintiff specifically contends,

> As a high ranking [] executive, [Defendant] had access to and retains knowledge of a tremendous amount of [Plaintiff]'s confidential and proprietary information and trade secrets.  If any of [Plaintiff]'s competitors in the floor covering business gain access to any of [Plaintiff]'s confidential and trade secret information, it will provide them with a significant and unfair

6

> competitive advantage. [Defendant's] employment at and activities for or on behalf of Totally Carpet will inevitably require the disclosure of [Plaintiff]'s Trade Secrets and other Confidential Information [Defendant] learned while employed by [Plaintiff], which will lead to irreparable harm. Due to the extensive contacts [Defendant] has with [Plaintiff] customers and those customers' knowledge of his former affiliation with [Plaintiff], he can cause tremendous irreparable harm by continuing to violate his contractual obligations and calling on those same customers on behalf of Totally Carpet.
>
> [Plaintiff] already has suffered irreparable injury from [Defendant's] violations of his contractual obligations not to compete in that Totally Carpet is building and operating its business relying in large part on the high level expertise and experience of [Defendant], as well as the confidential information and trade secrets he knows and can use to [Plaintiff]'s competitive disadvantage. [Plaintiff] will continue to suffer irreparable injury unless [Defendant] is enjoined from rendering service to or participating in Totally Carpet's business.
>
> [Plaintiff] also has already suffered irreparable injury from [Defendant's] violations of his contractual obligations not to solicit [Plaintiff]'s current and former customers and legitimate prospects in that Totally Carpet is building a customer base relying in large part on [Defendant's] relationships with and knowledge of [Plaintiff]'s current and former customers and legitimate prospects and the markets served by the sales force [Defendant] formerly oversaw. [Plaintiff] will continue to suffer irreparable injury and its relationships with its significant customers will likely be further impaired unless [Defendant] is enjoined from soliciting [Plaintiff]'s customers or former customers or promoting Totally Carpet's products to such businesses.
>
> Milliken also has already suffered irreparable injury from Evans' violations of his contractual obligations not to disclose or use Milliken's Confidential Information and Trade Secrets and will continue to do so if Evans is not restrained from further violations.

[*Id*. at 20–21 (internal citations omitted).] On the other hand, Defendant argues that Plaintiff will not suffer irreparable harm because monetary relief is available, which Plaintiff

has sought, and because Plaintiff has merely speculated that Defendant will disclose Plaintiff's trade secrets or confidential information at some time in the future. [Doc. 21 at 12–14.] Additionally, at the hearing, Defendant argued that Plaintiff's allowing Weiner and Totally Carpet to compete in the manner allowed in the Weiner Agreement cuts against Plaintiff's irreparable harm argument because to the extent Defendant is competing against Plaintiff, it is in the same manner that Plaintiff has expressly allowed Weiner and Totally Carpet to compete against Plaintiff. Accordingly, Defendant contends any competition by Defendant causes no more harm than Plaintiff has already agreed to allow.

Under the preliminary injunction standard articulated in *Winter*, a plaintiff must demonstrate more than the possibility of irreparable harm; the plaintiff must "demonstrate that irreparable injury is *likely* in the absence of an injunction." 129 S. Ct. at 375 (emphasis in original) (citing *Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983); *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 441 (1974); *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)). Here, Plaintiff has failed to demonstrate that it will likely suffer irreparable harm without a preliminary injunction because, at this stage, Plaintiff has not shown the Court any evidence of lost customer relationships or similar harm even though Plaintiff alleges Defendant has been affiliated with Totally Carpet since June 2013. The Court agrees with Plaintiff that loss of goodwill, customers, and market share are types of harm that satisfy the irreparable harm prong, *see Multi–Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994), *abrogated on other grounds by Winter*, 55 U.S. 7; *Industrial Packaging Supplies, Inc. v. Martin*, C.A. No. 6:12-713-HMH, 2012 WL 1067650, at *5 (D.S.C. Mar. 29, 2012); however, here, Plaintiff has not shown

more than a *possibility* of irreparable harm. More specifically, Plaintiff has failed to provide the Court with sufficient evidence of the financial impact Defendant's actions have had on Plaintiff's business and instead attempts to rely on conclusory statements from the declaration of Robert C. Baird ("Baird"), Vice President of Sales–Global Commercial Carpet, regarding irreparable harm to Plaintiff.[3] Although Defendant admitted in discovery responses that he has been performing services for Totally Carpet since mid-2013 and has called on Plaintiff's customers on behalf of Totally Carpet [Doc. 23-1 at 6, 13–14], this Court finds that such admissions are insufficient to provide a clear showing of irreparable harm, especially where the evidence establishes that Baird is unaware of any lost sales to Plaintiff [Doc. 52-1 at 127:11–128:7] and Baird testified that he is not aware of any customers who have said they no longer want to do business with Plaintiff because they want to do business with Totally Carpet [*id.* at 132:17–23].[4] This lack of evidence to

---

[3]Likewise, with respect to Defendant's alleged use of any proprietary information, Plaintiff also has provided the Court with insufficient evidence to establish that irreparable injury is likely. Although Baird averred that Plaintiff has suffered irreparable injury from Defendant's use of confidential information or trade secrets [Doc. 20-3 ¶ 40], other than this speculative and conclusory statement, Plaintiff has produced no evidence that Defendant is using any information he obtained from Plaintiff. *See Pennington v. Kershaw County*, C/A No. 3:12-1509-JFA-SVH, 2012 WL 2389979, at *1 (D.S.C. Jun. 25, 2012) (finding that plaintiff had not met his burden in establishing that a preliminary injunction was appropriate and noting that he relied on speculation and conjecture). The Court is aware that Defendant previously refused to produce documents the Court has since ordered Defendant to produce as responsive to discovery requests. [*See* Doc. 48.] However, on the record before the Court at this time, Baird's conclusory averments are insufficient to establish irreparable harm.

[4]The parties dedicate portions of their memoranda to whether Plaintiff bases its allegations regarding Defendant's solicitation of customers on speculation and hearsay or on Defendant's own admissions. [Docs. 53 at 3; 54 at 5.] Plaintiff argues it need not speculate or rely on hearsay because Evans has admitted as much in discovery responses. [Doc. 54 at 5.] These arguments would be applicable to the merits of whether Defendant is breaching restrictive covenant provisions in his contract with Plaintiff;

9

establish the financial impact of Defendant's actions when Defendant has been associated with Totally Carpet for over one year cuts against Plaintiff's argument that irreparable injury is likely. Additionally, that Plaintiff has carved out a limited space in the market for Totally Carpet to compete with Plaintiff, with no restrictions as to customers or geographic area, cuts against its argument that irreparable injury is likely. Even though Plaintiff alleges that Weiner and Defendant were exposed to different kinds of information during their employment with Plaintiff, the Court is not convinced that irreparable injury would occur if an injunction is not issued because Totally Carpet would continue to compete with Plaintiff, with Plaintiff's express consent. Thus, Plaintiff has failed to establish that any harm caused by Defendant would be irreparable when it has previously consented to competition in this limited space.

Further, the Court is not convinced that such harm is not subject to mathematical calculation. *See Hughes Network Systems, Inc. v. InterDigital Communications Corp.*, 17 F.3d 691 (4th Cir. 1994) (noting the presumption that preliminary injunctions will not issue in cases where the harm suffered may be remedied by money damages at judgment). Plaintiff seeks monetary damages in this action, and these monetary damages would provide an adequate remedy at law and obviate the need for an injunction. Although Plaintiff argues that its inability to prove monetary damages directly supports the need for injunctive relief, it also notes that Defendant's compliance with the Court's Order granting

---

however, as discussed below, the Court declines to address the likelihood of success on the merits at this stage of litigation because Plaintiff has failed to establish the irreparable harm prong of the preliminary injunction analysis. *See Winter*, 555 U.S. at 23 (noting that injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief").

Plaintiff's motion to compel may provide the information to calculate existing monetary damages. [Doc. 54 at 9.] Accordingly, as it seems that the harm may be mathematically calculated,[5] and a clear showing of irreparable harm has not been made, a preliminary injunction is not appropriate.[6]

## RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Plaintiff's motion for a preliminary injunction be DENIED.

IT IS SO RECOMMENDED.

s/ Jacquelyn D. Austin
United States Magistrate Judge

October 10, 2014
Greenville, South Carolina

---

[5]Indeed, because the motion for preliminary injunction was not filed until one year after Defendant became associated with Totally Carpet, this Court will have to delve into an analysis of lost profits and market share. Because much of the alleged damage has already occurred and because such damages may be quantified monetarily, Plaintiff has failed to demonstrate immediate irreparable harm. *See Marco Specialties, Inc. V. Legacy Circuit Enters., LLC*, C/A No. 3:12-cv-1274-JFA, 2012 WL 1963597, at *1 (D.S.C. May 31, 2012) (finding plaintiff had failed to demonstrate immediate irreparable harm where damages could be calculated in lost sales and market share).

[6]Because *Winter* requires a plaintiff to establish all four elements to receive injunctive relief and, here, Plaintiff has failed to demonstrate that it will suffer irreparable harm if an injunction is not issued, the Court declines to address the other *Winter* factors. The Court notes, however, that this is not a typical breach of contract case involving restrictive covenants; in this case, to address the likelihood of success on the merits prong, the Court would first have to determine which restrictive covenant provisions Defendant is subject to—those in the 2009 Employment Agreement or those in the Associate Agreement—and then determine whether each of the restrictive covenants Defendant is subject to is enforceable and, if so, whether Plaintiff is likely to succeed in showing that Defendant has breached the particular covenant.