UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Milliken & Company, | ) | Civil Action No.: 7:14-CV-778-BHH |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | **Opinion and Order** |
| Richard W. Evans, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on Defendant's motion to dismiss or, in the alternative, for a more definite statement, and to strike (ECF No. 95) and Plaintiff's motion to consolidate (ECF No. 103). For the reasons set forth in this order, Defendant's motion to dismiss is denied. Regarding the motion to consolidate, the Court grants Defendant seven (7) days to file additional briefing delineating: 1) whether Defendant still objects to consolidation given the Court's ruling on the motion to dismiss, and 2) if he still objects, why Defendant believes consolidation is not appropriate under the applicable law. The Plaintiff shall have seven (7) days thereafter to file a reply.

## BACKGROUND

Plaintiff ("Milliken") designs, manufactures, markets, and sells commercial carpet products, including a wide range of high-performance modular and broadloom carpet products and floor coverings to customers in the commercial carpet markets, including the corporate, education, government, healthcare, senior living, retail, hospitality, aviation, and assembly markets, both inside and outside of the United States. (ECF No. 94 at 4.) Plaintiff refers to this part of its business as its Floor Covering Division, within which Milliken maintains manufacturing facilities in the United States, the United

1

Kingdom, and China. (*Id.*) Plaintiff hired Defendant ("Evans") in October 2009 in connection with the purchase of Defendant's former employer—Product Concepts Residential, LLC ("Constantine")—in which Defendant held an ownership interest. (*Id.* at 5.) Plaintiff and Defendant executed an Executive Employment and Protective Covenants Agreement ("Employment Agreement") on October 5, 2009, under which Milliken employed Evans as the President of Milliken's newly-established "Constantine Division," formed following its purchase of Constantine. (*Id.*; ECF No. 20-4) The Employment Agreement contained the following restrictive covenants: non-competition, non-solicitation of customers, non-solicitation of associates, and non-disclosure and non-use of confidential information and trade secrets. (ECF No. 94 at 6–7.) Defendant served as a high ranking executive within Milliken—initially as a Division President and then, following a promotion after a company reorganization, as Division Business Manager—and participated in the sales and marketing of Milliken's products throughout the United States and the development of corporate strategies related thereto. (*Id.* at 4.)

Plaintiff alleges that, as an upper level executive within the company, Defendant was exposed to a significant amount of Milliken's confidential information and trade secrets in the course of his work, including regional and business strategy, financial performance, customer prospects, pricing and design information, delivery and quality issues, and marketing initiatives. (*Id.* at 5.) Plaintiff further alleges that Milliken takes extensive precautions to protect the confidential, proprietary and trade secret information it provides to associates like Defendant, including drafting the restrictive covenants like those itemized above, which it requires associates to endorse in their employment contracts. (*Id.* at 6.)

On June 10, 2010, Plaintiff and Defendant executed an Agreement to Modify and Amend Provisions of a Prior Employment and Protective Covenants Agreement ("Amendment to Employment Agreement"). (*Id.* at 9; ECF No. 20-5.) Under the Amendment to Employment Agreement, Milliken agreed to employ Evans as Business Manager of its new Commercial Carpets, North America division. (ECF No. 94 at 9.) Evans agreed "to execute and be bound by all of the terms of Milliken's Associate Agreement." (*Id.*; ECF No. 20-5 at 2.) Milliken's Associate Agreement ("Associate Agreement") contains non-competition, non-solicitation, and non-disclosure covenants similar to those contained in Evan's original Employment Agreement. (ECF No. 94 at 9–12; ECF No. 20-6 at 3–7.) Evans asserts that he did not sign the Associate Agreement and Milliken is unable to locate a copy of the Associate Agreement signed by Evans. (ECF No. 94 at 12.)

Evans voluntarily notified Milliken of his resignation on March 12, 2013 by way of a hand-written letter. (*Id.*) Plaintiff alleges that following his resignation, Defendant has provided services for or on behalf of a competitor company, Totally Enterprises ("Totally Carpet"), in direct violation of his contractual obligations. (*Id.* at 14–15, 19–23.) In addition, Plaintiff alleges that Defendant was working for and/or performing services for or on behalf of Totally Carpet while he was still employed at Milliken, again in violation of his contractual obligations. (*Id.* at 15, 17–18.) It is alleged that Evans became officially engaged in running the operations of Totally Carpet and serving as President of the company on May 20, 2013. (*Id.* at 19.) The owner and founder of Totally Carpet is Robert Weiner ("Weiner"), another former Milliken executive. (*Id.* at 13.) Weiner was previously the majority owner of Constantine—the same company in which Evans held

a minority ownership interest, which was sold to Milliken in the October 2009 acquisition. (*Id.* at 14.) When Milliken acquired Constantine, Weiner signed an employment agreement and agreed to certain obligations not to compete against Milliken. (*Id.*) Weiner ceased working for Milliken prior to Evans' resignation and, on December 5, 2012, entered into a consulting agreement with Milliken. (*Id.*) On March 25, 2013, Milliken and Weiner terminated the consulting agreement and entered a Collaboration and Protective Covenants Agreement ("Weiner Agreement"). Plaintiff alleges that in the Weiner Agreement, Weiner agreed to refrain from soliciting employees or exclusive sales agents of Milliken into competition against Milliken. (*Id.*) Plaintiff further alleges, *inter alia*, numerous communications by Evans to Weiner, and actions taken by Evans in conjunction with Weiner and Totally Carpet, in violation of Evans' alleged duties of non-competition, non-solicitation, and non-disclosure. (*See id.* at ¶ 64, 72, 82, 134.)

## STANDARD OF REVIEW

**Motion to Dismiss—Rule 12(b)(6)**

A plaintiff's complaint should set forth "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff . . . ." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). A court should grant a Rule 12(b)(6) motion if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

As previously noted, to survive a Rule 12(b)(6) motion to dismiss, a complaint must state "a *plausible* claim for relief." *Iqbal*, 556 U.S. at 679 (emphasis added). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Still, Rule 12(b)(6) "does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Colon Health Centers of Am., LLC v. Hazel*, 733 F.3d 535, 545 (4th Cir. 2013) (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)). "A plausible but inconclusive inference from pleaded facts will survive a

motion to dismiss . . . ." *Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico*, 628 F.3d 25, 30 (1st Cir. 2010).

**Motion for a More Definite Statement—Rule 12(e)**

"A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). A Rule 12(e) "motion is 'designed to strike at unintelligibility rather than simple want of detail.'" *Ethox Chem., LLC v. Coca-Cola Co.*, No. 6:12-cv-1682-TMC, 2013 WL 41001, *5 (D.S.C. Jan. 3, 2013) (quoting *Frederick v. Koziol*, 727 F. Supp. 1019, 1020–21 (E.D. Va. 1990)). Moreover, such a motion "'is not a substitute for the discovery process, and where the information sought by the movant is available or properly sought through discovery, the motion should be denied.'" *Id.* The decision to grant a Rule 12(e) motion rests within the discretion of the Court. *Hodges v. Sloan Const.*, No. 7:13-CV-01799-JMC, 2013 WL 6903755, at *3 (D.S.C. Dec. 31, 2013) (citing *Hodgson v. Virginia Baptist Hosp.*, 482 F.2d 821, 824 (4th Cir. 1973)).

**Motion to Strike—Rule 12(f)**

Rule 12(f) of the Federal Rules of Civil Procedure permits the Court to strike "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Rule 12(f) motions are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'" *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (quoting 5A Wright & Miller, Federal Practice & Procedure § 1380, 647 (2d ed.1990)).

**Motion to Consolidate**

District courts have broad discretion to consolidate cases pending in the same district under Fed. R. Civ. P. 42(a). However, the Court of Appeals for the Fourth Circuit has indicated that the district court must critically assess the following considerations prior to consolidation: (1) the specific risks of prejudice and possible confusion as against the risk of inconsistent adjudications of common factual and legal issues; (2) the burden on parties, witnesses and available judicial resources posed by multiple lawsuits; (3) the length of time required to conclude multiple suits as against a single one; and (4) the relative expense to all concerned of the single-trial, multiple-trial alternatives. *Trotter Site Preparation, LLC v. Local 470, Int'l Union of Operating Engineers*, 2010 WL 200788, *1 (D.S.C. 2010) (citing *Arnold v. Eastern Airlines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982)). "In other words, consolidation is appropriate when to do so will 'foster clarity, efficiency and the avoidance of confusion and prejudice.'" *Workman v. Nationwide Mut. Ins. Co.*, 2013 WL 2285937, at *3 (D.S.C. 2013) (quoting *Allfirst Bank v. Progress Rail Svcs. Corp.*, 178 F. Supp. 2d 513, 520 (D.Md. 2001)).

## DISCUSSION

### I. The Amended Complaint Is Sufficiently Specific Regarding Which Agreement Was Allegedly Violated

Defendant first argues that Plaintiff's Amended Complaint is not specific enough to state a plausible claim for relief because it is unclear which agreement and which set of restrictive covenants it seeks to enforce. Pointing to the three agreements that are incorporated into the Amended Complaint (Employment Agreement, Amendment to Employment Agreement, Associate Agreement), Defendant contends that Plaintiff has "asserted five causes of action all predicated on allegations Evans breached a blend of

'contractual obligations' without ever specifying which, if any, of the agreements actually is binding and enforceable." (Mot. to Dismiss 3, ECF No. 95-1.) Defendant further argues that the relevant provisions of the three agreements are materially inconsistent, that two of them are unenforceable by their express terms, and that the ambiguity in the "competing provisions" should be construed against the drafter of the agreements— Milliken. (*Id.*)

To summarize, Defendant asserts that the original Employment Agreement was superseded by the Amendment to Employment Agreement (which contains no restrictive covenants), and that the Associate Agreement was never signed by Evans and thus cannot be enforced against him. (*Id.* at 4–11.) Defendant finds "inherent ambiguity" in the "conflicting provisions" of the agreements,[1] and observes an "obvious lack of enforceability of the non-compete and non-solicitation provisions contained in the original Employment Agreement and the non-compete provision in the unsigned Associate Agreement."[2] (*Id.*) As an alternative to dismissal for this putative fatal ambiguity, Defendant suggests that the Court should require Milliken to submit a more

---

[1] Defendant has included within his motion to dismiss an extensive chart showing the purported ambiguity and conflict between the relevant agreements, which the Court has reviewed in detail.

[2] Defendant makes an additional argument that he is "entitled to dismissal of all claims arising [under the Associate Agreement]" on grounds that South Carolina law does not permit enforcement of an unsigned contract that does not satisfy the statue of frauds. (Mot. to Dismiss 11, ECF No. 95-1.) However, this argument becomes largely moot in light of the fact, explained more fully below, that Milliken primarily seeks enforcement of the restrictive covenants in the original Employment Agreement. (*See* Counts I-IV, Amend. Compl. 24-30, ECF No. 94.) As reflected in Count V of the Amended Complaint, Milliken alleges that Evans is liable for breach of his contractual obligations under the Associate Agreement only "[t]o the extent [he] prevails in avoiding his restrictive covenant obligations" under the original Employment Agreement. (*Id.* at 31.) Alternatively, Milliken alleges Evans is liable for his "apparent refusal to sign the Associate Agreement" under promissory estoppel theory. (*Id.*) The Court finds that these theories of liability state plausible alternative claims to relief, the statute of frauds notwithstanding. It is undisputed that Evans signed the Amendment to Employment Agreement, in which he agreed to *execute and be bound by* the terms of the Associate Agreement. (ECF No. 20-5 at 2.) The Court anticipates that the disagreement between the parties regarding which set of restrictive covenants, if any, is enforceable against Evans will be the crux of this litigation and welcomes further legal argument on this point at summary judgment. However, at this stage of the proceedings the Court concludes that Plaintiff has satisfied the minimal pleading requirements to survive a Rule 12(b)(6) motion under each of its alternative theories.

definite statement of exactly which contract and which provisions it seeks to enforce. (*Id.* at 3–4.)

Plaintiff responds that the Amended Complaint provides a detailed recitation of the restrictive covenants in his Employment Agreement to which Evans agreed and a detailed description of how Evans allegedly breached his contractual obligations, including specific examples of actions taken in violation of the restrictive covenants. (ECF No. 98 at 11.) The Amended Complaint, argues Plaintiff, leaves little doubt as to *which* set of restrictive covenants Milliken is seeking to enforce:

> 141. Milliken asserts that the restrictive covenant terms of the Employment Agreement continue to bind Evans, as he never signed an agreement superseding those terms.

> 142. Evans claims that he is not subject to the restrictive covenant terms of the Employment Agreement because the Amendment to the Employment Agreement superseded those terms, and Evans claims he is not subject to the restrictive covenant terms of the Associate Agreement because he did not sign the Associate Agreement.

> 143. To the extent Evans prevails in avoiding his restrictive covenant obligations, which he should not, Evans is liable to Milliken for a breach of his contractual obligations to execute and be bound by the standard Milliken & Company Associate Agreement.

(*Id.* at 11–12; ECF No. 94 at 31.) Plaintiff contends that in order to survive a motion to dismiss its breach of contract claims pursuant to Rule 12(b)(6), it need only plead: (1) the existence of contractual obligations binding upon Evans (specifically including the restrictive covenants); (2) Evans' breach of those obligations; and (3) damages resulting from such breach. Plaintiff further contends that its Amended Complaint contains the requisite specificity on each of those elements. The Court agrees.

The Court is not unsympathetic to Defendant's observations regarding the rather unique and complex scenario in which the parties find themselves; specifically, Evans'

promise to execute and be bound by all of the terms of the Associate Agreement (*see* ECF No. 20-5 at ¶ 3) and the apparent lack of an Associate Agreement signed by Evans (*see* ECF Nos. 94 at 12 and 20-6 at 7). However, the Court does not perceive any lack of specificity as to which agreement and which set of restrictive covenants Plaintiff seeks to enforce. (*See* Amend. Compl. ¶ 141, ECF No. 94.) Plaintiff's theory is that the restrictive covenants in the original Employment Agreement were and are still binding upon Evans at all times relevant to the case. The Court is not sufficiently persuaded by Defendant's assertions that the relevant terms of the various agreements irreconcilably conflict and present fatal ambiguity such that dismissal of Plaintiff's claims is appropriate at this stage.

Certainly, Plaintiff may encounter difficulty in successfully enforcing the original restrictive covenants at later stages. One need only look to paragraph eight of the Amendment to Employment Agreement to see that there are potentially significant hurdles for Plaintiff to overcome:

> **8. Entire Agreement and Validity of Terms.** Associate and the Company agree that this Agreement is intended to modify previous agreements by and between them on the subjects covered by this Agreement, and that other than the terms specifically surviving due to modifications set forth in this Agreement, Associate does not rely, and has not relied, upon any prior representation or statement not set forth herein by the Company or any of the Company's agents, representatives, or attorneys, and that this Agreement supersedes all prior or contemporaneous oral or written agreements, representations, and undertakings on the subjects contained herein. Any such prior agreements, representations, or undertakings not specifically referenced in this Agreement shall have no force or effect, and are superseded by this Agreement. Associate also understands that this Agreement may be changed only by a subsequent agreement in writing signed by both parties.

(ECF No. 20-5 at 5.) However, it is also unmistakable that: (1) the original Employment Agreement contains identical language affirming "Associate understands that this Agreement may be changed only by a subsequent agreement in writing signed by both parties" (ECF No. 20-4 at ¶ 18); (2) the stated intent of the Amendment to Employment Agreement is to "modify previous agreements by and between [the parties] *on the subjects covered by* [the Amendment]," and it purports to "supersede all prior . . . agreements . . . *on the subjects contained herein*" (ECF No. 20-5 at ¶ 8 (emphasis added)); (3) the Amendment to Employment Agreement itself contains no restrictive covenants; (4) the Amendment to Employment Agreement makes only cursory reference to the restrictive covenants in the Employment Agreement (*see Id.* at ¶ B); and (5) the Amendment to Employment Agreement clearly contemplates the substitution of certain contractual terms about which it is not specific (presumably including restrictive covenants) by requiring the Associate to execute and be bound by all terms of the Associate Agreement (*see Id.* at ¶ 3).

But it is not within the Court's purview to weigh the merits of the parties' respective positions at this stage. The Federal Rules of Civil Procedure explicitly permit alternative pleading, Fed. R. Civ. P. 8(d)(2), and Plaintiff has engaged in that method. The Court looks forward to more detailed briefing at later stages; specifically, on the question of whether the restrictive covenants in the original Employment Agreement enjoy ongoing enforceability in light of Evans' apparent failure to execute the Associate Agreement. Based on the foregoing, the motion to dismiss on grounds that the Amended Complaint lacks specificity with regard to which agreement it seeks to enforce

is denied. For the same reasons, Defendant's alternative request for an order requiring Plaintiff to submit a more definite statement is denied.

## II. The Amended Complaint Alleges Sufficient Facts to State a Plausible Claim For Breach of Evans' Contractual Obligations and Resulting Damages

Defendant next argues that Plaintiff's Amended Complaint fails under Rule 12(b)(6) because of a purported "lack of specificity regarding anticipated (but not factually plead) disclosure of trade secrets, confidential information, and damages." (ECF No. 95-1 at 12.) Quoting various segments of the Amended Complaint, Defendant asserts that the facts pled amount to "speculative and generic 'the-defendant-unlawfully-harmed-me' allegations . . . insufficient to state a claim given the pleading requirements of Fed. R. Civ. P. 8." (*Id.* at 13.) At bottom, Defendant maintains that Plaintiff has failed to plead any specific trade secret Milliken communicated to Evans and that Evans in turn divulged to a third party, and failed to plead any specific, quantifiable harm from Evans' alleged actions—either in lost sales or lost customers. (*See id.* at 14–15.) Defendant likens the Amended Complaint in this case to the pleadings in *Milliken & Co. v. Smith*, No. 7:10-CV-00301-JMC, 2011 WL 939211, at *3 (D.S.C. Mar. 16, 2011), where this Court found that Milliken failed to state a claim for misappropriation of trade secrets by a former employee.

Plaintiff responds that it has fully and properly pled a claim for Evans' breach of contract by way of violation of his non-disclosure obligations. First, Plaintiff asserts that it has clearly alleged Evans' contractual obligations under the Employment Agreement, including non-disclosure obligations specifically related to confidential and proprietary information to which Evans had access while employed at Milliken. (ECF No. 94 at ¶¶ 22-23, 28, 31.) Next, Plaintiff lists various alleged facts that show the purported ways in

which Evans breached his non-disclosure obligations. (ECF Nos. 98 at 13; 94 at ¶¶ 68-69, 76, 88, 90, 134.) Finally, Plaintiff itemizes the damages pled, which it believes have resulted and will continue to result from Evans' alleged breach of his non-disclosure obligations. (ECF Nos. 98 at 14; 94 at ¶¶ 75, 104.) In sum, Plaintiff argues that the Amended Complaint includes ample facts and specificity to state a plausible claim for relief. The Court agrees.

It is true that Judge Childs, writing for this Court, dismissed the plaintiff's complaint in *Milliken & Co. v. Smith*, No. 7:10-CV-00301-JMC, 2011 WL 939211, at *3 (D.S.C. Mar. 16, 2011), due to a lack of specificity with regard to any actions taken by the former employee that amounted to actual misappropriation of trade secrets. *Id.* (holding that a bald assertion of "threatened" disclosure, without more, does not fulfill the elements of an action for misappropriation of trade secrets). However, the Amended Complaint in this case clearly differs from the complaint in *Milliken & Co. v. Smith*. In that case, the plaintiff appears to have pled little more than that the former employee went to work for a competitor company and that disclosure of Milliken's trade secrets was inevitable. *Id.*

Here, Milliken has pled that Evans used his personal relationships with Milliken employees to obtain confidential and proprietary information about Milliken and its products that is not available outside of Milliken, and then used that information to compete unfairly against Milliken. (ECF No. 94 at ¶ 88.) In support of this claim, Milliken has alleged, *inter alia*, specific email communication between Evans and a Milliken employee improperly exchanging confidential information, Evans' improper disclosure of an internal presentation belonging to Milliken and relating to proprietary information

13

about the Constantine product line, Evans' forwarding of his Milliken company emails containing confidential business information to this personal Gmail account in anticipation of leaving Milliken to work for competitor Totally Carpet, Evans actively assisting Totally Carpet sales representatives in developing strategy to deal with customers with which Evans worked in his role at Milliken, Evans providing a Totally Carpet territory manager proprietary information comparing Totally Carpet's backing system to the Milliken/Constantine backing system, and the list goes on. (*Id.* at ¶¶ 88, 90, 134.) This is not to mention the fact that Evans is alleged to have begun working for and/or performing services for or on behalf of Totally Carpet even before he resigned from Milliken. (*Id.* at ¶ 66, 81–82.) All of these allegations taken together paint a very different picture than the speculative assertions of "threatened" disclosure in *Milliken & Co. v. Smith.* Plaintiff has pled concrete facts that describe the disclosure of Milliken's proprietary information and related actions that could reasonably lead one to believe further disclosure, beyond Milliken's current knowledge, has and/or will continue to occur.

Indeed, with regard to their specificity, the instant allegations are more reminiscent of the allegations in *Nucor Corp. v. Bell*, 482 F. Supp. 2d 714 (D.S.C. 2007). In *Nucor*, the plaintiff corporation averred that a former employee misappropriated trade secrets by downloading proprietary information off of his corporate computer for use in his new role as executive vice president at a competitor business, and broke restrictive covenants in his employment agreement by soliciting and recruiting several employees to leave the plaintiff's corporation and join the competitor business. *Id.* at 720. Judge Duffy, writing for this Court, found that Nucor stated plausible claims for relief for, *inter*

14

*alia*, misappropriation of trade secrets and breach of contract. *Id.* at 730. Plaintiff alleges a similar course of conduct in this case. While it is not alleged that Evans blatantly downloaded trade secrets off of his Milliken computer and transferred the files to Totally Carpet, Plaintiff has nonetheless pled specific facts that amount to disclosure by Evans of Milliken's proprietary information, albeit by slightly more indirect means.

Regarding damages, the Court will not dismiss Milliken's claims because of its inability to precisely quantify, at the pleading stage, the alleged damage to its business reputation, harm to its customer relationships, harm from unfair competition, actual and potential lost business, and harm from Evans' alleged use and disclosure of Milliken's trade secrets and/or confidential information. As is appropriate, Milliken will be afforded an opportunity to prove substantiated damages with information obtained during the discovery process. "The factual allegations in the complaint, viewed as a whole, have 'facial plausibility' that 'allow[] the court to draw reasonable inference that the defendant is liable for the misconduct alleged.'" *Tobey v. Jones*, 706 F.3d 379, 389 (4th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). Moreover, the Amended Complaint does not amount to merely "'threadbare recitals of a cause of action's elements supported by mere conclusory statements.'" *Id.* Thus, the Court finds that the Amended Complaint states plausible claims for relief on all counts, and the motion to dismiss on grounds that Plaintiff has not pled with sufficient factual specificity is denied. For the same reasons, Defendant's alternative request for a more definite statement is denied.

### III. A Motion to Strike is Not Warranted

Finally, Defendant argues that the Amended Complaint includes allegations relating to pre-suit negotiations between counsel and improper references to discovery

motions and orders previously entered by the Court. (ECF No. 95-1 at 15.) "Such pleadings," asserts Defendant, "are immaterial, impertinent, and should be stricken pursuant to Fed. R. Civ. P. 12(f)." (*Id.*)

Plaintiff responds that none of the nine paragraphs Defendant seeks to strike include redundant, immaterial, impertinent, or scandalous allegations that would bring them under the parameters of Rule 12(f). (ECF No. 98 at 16.) The Court agrees. On this point, the Court would say very little. Other than the bald assertion that Rule 12(f) applies, Defendant has failed to cite any authority or present any rationale for why paragraphs 73–75, 77–81, and 87 of the Amended Complaint are immaterial or impertinent. Indeed, the Court is unsure what Defendant is even seeking to critique in the challenged paragraphs. In the absence of any authority or cogent argument supporting Defendant's position, it would be extraneous effort to explain why each of the paragraphs is proper, and the Court declines to do so. Accordingly, the motion to strike is denied.

## IV. Motion to Consolidate

On July 29, 2015, Plaintiff filed its motion to consolidate (ECF No. 103) the instant action ("Evans case") with a companion case, *Milliken & Company and Milliken Design, Inc. f/k/a/ Sylvan Chemical Co. Inc. v. Robert S. Weiner and Totally Enterprises, LLC, d/b/a/ Totally Carpet and Sidetuft, LLC*, C.A. No. 7:14-cv-04422-BHH ("Weiner case"). On August 17, 2015, the defendants in the companion case filed a response in opposition to the motion to consolidate (Weiner case, ECF No. 30). Plaintiff filed a reply (Weiner case, ECF No. 32) on August 27, 2015. On August 28, 2015, Defendant filed its motion for leave to file a response out of time (Evans case, ECF No. 107). The Court

granted the motion for leave to file a response out of time by way of a text order (Evans case, ECF No. 111) on November 18, 2015.

The Court has considered Plaintiff's motion, the Weiner defendants' response, Plaintiff's reply in the Weiner case, and Defendant's response in the instant case, and hereby grants Defendant seven (7) days to file additional briefing delineating: (1) whether Defendant still objects to consolidation given the Court's ruling on the motion to dismiss; and (2) if he still objects, why Defendant believes consolidation is not appropriate under the applicable law. The Plaintiff is granted seven (7) days thereafter to file a reply. Neither submission should exceed ten pages in length as neither party should feel the need to regurgitate facts and arguments already in the record.

The basis for Plaintiff's motion to consolidate is that Milliken's case against Evans and Milliken's case against Weiner are very closely related, involve common questions of law and fact, and implicate many of the same witnesses and documents. In their response, the Weiner defendants vehemently objected to consolidation of the two actions arguing that: (1) differences in the procedural posture between the two cases would make consolidation impracticable and potentially introduce delay; (2) there are no common questions of law and fact between the cases; and (3) consolidating the cases would prejudice Weiner and violate his due process rights. (Weiner case, ECF No. 30 at 2–14.) In attempting to outline the differences in procedural posture, the Weiner defendants stressed heavily the fact that discovery in that case had not yet begun because their Rule 12 motion to dismiss was pending at that time, whereas substantial discovery had already occurred in the Evans case. (*Id.* at 3–4.) This is no longer true,

given that the Court denied the Weiner defendants motion to dismiss on September 17, 2015. (Weiner case, ECF No. 36.)

Defendant Evans initially neither consented to nor objected to the motion to consolidate, but instead viewed the motion as premature pending the outcome of the motions to dismiss in both cases. (Evans case, ECF No. 107-1 at 3–4.) In his response, Defendant adopted the Weiner defendants' arguments in opposition to consolidation and indicated that he "object[ed] to consolidation at this juncture." (*Id.* at 4.) After respectfully urging the Court to deny the motion to consolidate without prejudice pending a ruling on Evans' motion to dismiss, Defendant requested that the Court permit additional briefing on the consolidation question, if necessary, once that motion had been decided. (*Id.*)

By way of this Order, the Court has disposed of Defendant's motion to dismiss, and Plaintiff's action, like Milliken's action against Weiner, has survived in its entirety. Based on Defendant's representations regarding the reasons why he viewed the motion to consolidate as premature, it would appear at first blush that Defendant will no longer object to consolidation based on this result. (*See* Ex. A, Def. Resp. in Opp. to Mot. to Consolidate, ECF No. 107-2 at 2 ("Resolution of that motion, as well as the motion to dismiss pending in the related action, may greatly impact the commonality of questions of law and fact as alleged by Milliken."); Ex. B, ECF No. 107-3 at 2 ("If the Court grants our motion to dismiss, the claims asserted against the parties will be quite different and would militate against consolidation. The converse *might* also be true." (emphasis in original)).) But the Court does not want to presume upon Defendant. Thus, in an abundance of caution, the Court is hereby granting Defendant an opportunity to

supplement his briefing on the consolidation issue. The Plaintiff, of course, will have a corresponding opportunity to reply based on that supplementary briefing, if any.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss or, in the alternative, for a more definite statement, and to strike (ECF No. 95) is DENIED. Resolution of Plaintiff's motion to consolidate (ECF No. 103) is deferred, as the Court hereby grants Defendant seven (7) days to file additional briefing delineating: (1) whether Defendant still objects to consolidation given the Court's ruling on the motion to dismiss; and (2) if he still objects, why Defendant believes consolidation is not appropriate under the applicable law. The Plaintiff shall have seven (7) days thereafter to file a reply.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

February 8, 2016
Greenville, South Carolina